**FILED**

UNITED STATES DISTRICT COURT

SEP 21 2011

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| UNITED STATES ex rel. Matt Onnen, | * | CIV. 07-4174 |
| Plaintiff, | * | |
| vs. | * | |
| SIOUX FALLS INDEPENDENT SCHOOL DISTRICT #49-5, a local government agency, and DARIN DARBY, DEANNA BARTH, KENT ALBERTY, DEBBIE HOFFMAN, and DOUG MORRISON, the duly elected, qualified, and acting Members of the Sioux Falls School Board, individually and in their official capacities, and PAMELA HOMEN, the duly appointed, qualified, and acting Superintendent of Schools of the Sioux Falls Independent School District, in her individual and official capacities, | * | MEMORANDUM OPINION and ORDER<br><br>(Defendants' Motion for Judgment on the Pleadings, or in the Alternative, for Summary Judgment, Doc. 105)[1] |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

On August 15, 2011, the Defendants filed a Motion for Judgment on the Pleadings or Alternatively for Summary Judgment,[2] along with a Statement of Undisputed Material Facts[3] and

---

[1] This decision is based on matters outside the pleadings and is therefore a decision on the Motion for Summary Judgment. *BJC v. Columbia Casualty Co.*, 348 F.3d 685, 687 (8th Cir. 2003).

[2] Doc. 105.

[3] Doc. 106.

a Supporting Brief.[4] Defendants also filed supporting Affidavits.[5] Thereafter, Plaintiff filed his Affidavits opposing the Defendants' Motion,[6] along with his Response to Defendants' Statement of Undisputed Material Facts and Statement of Undisputed Material Facts[7] and a Brief in Response to the Defendants' Motion.[8] The Defendants filed a Reply Brief[9] and the Second Affidavit of Anthony Hohn.[10] The parties submitted supplemental briefs on the limited issue of the Sioux Falls School District's respondeat superior liability for allegedly false claims made by STI.[11] Additionally, the Court heard oral arguments during the pre-trial conference which was held on Monday, September 12, 2011. The Court has considered the parties' written and oral arguments.

## FACTUAL AND PROCEDURAL BACKGROUND

Onnen worked as Registrar at Southeast Technical Institute (STI) before he was terminated on August 30, 2007. The Sioux Falls School Board ratified his termination on September 10, 2007. Onnen appealed the board decision to the Circuit Court, Second Judicial Circuit, Minnehaha County, South Dakota, on November 6, 2007, pursuant to SDCL 13-46-1. The Circuit Court determined Onnen was terminated for incompetence and affirmed the board decision on January 25, 2010. Onnen appealed the Circuit Court decision to the South Dakota Supreme Court. On August 3, 2011, the South Dakota Supreme Court affirmed. *Onnen v. Sioux Falls School Dist. #49-5*, 2011 WL 3359670 (SD 2011).

---

[4]Doc. 110.

[5]Docs. 107 (Holcomb); 108 (Johnson); 109 (Hohn).

[6]Docs. 111 (Onnen) and 112 (Pekas).

[7]Doc. 113.

[8]Doc. 114.

[9]Doc. 120

[10]Doc. 119.

[11]Doc. 124 and 126.

On November 19, 2007, Onnen filed his *qui tam* Complaint which commenced this federal litigation under the False Claims Act. The False Claims Act provides for a 60 day period during which the pleadings are sealed to provide an opportunity for the United States to intervene. He filed an Amended Complaint on November 21, 2007.[12] He filed a Second Amended Complaint on March 7, 2008.[13] After extensions of the 60 day time period to decide, the United States on August 5, 2008, declined to intervene.

On December 1, 2008, the Defendants filed a Motion to Dismiss. On May 28, 2009, Defendants' Motion to Dismiss was granted without prejudice to allow Onnen to file another Amended Complaint which complied with Fed. R. Civ. P. 9(b) pleading requirements. Onnen moved to amend his Complaint and Defendants opposed his motion. On December 7, 2009, the Defendants asked Judge Piersol to consider new authority. On December 17, 2009, Judge Piersol filed an Order which allowed Onnen to amend. On December 17, 2009, Judge Piersol filed another Order, after considering the new authority, refusing to dismiss Onnen's Complaint. Judge Piersol directed Onnen to file his Complaint within five business days from December 17, 2009. Because Onnen did not, the Defendants moved to dismiss. On August 9, 2010, Judge Piersol filed an Order which denied Defendants' Motion to Dismiss and directed Defendants to answer the Supplemented Amended Complaint which Onnen filed on January 4, 2010.[14] After further sparring about sanctions and motions to amend and correct pleadings and still another Motion to Dismiss, on February 18, 2011, Judge Piersol filed an Order which granted in part and denied in part the pending Motion to Dismiss.[15] On March 4, 2011, Defendants filed their Answer to Onnen's Supplemented

---

[12] Doc. 8.

[13] Doc. 22. It is the second amendment of the originally filed Complaint, but it is entitled "First Amended Complaint."

[14] Doc. 66.

[15] Judge Piersol granted the Defendants' Motion to Dismiss the retaliation portion of the False Claims Act claim under 31 U.S.C. § 3730(h). Judge Piersol reasoned this portion of Onnen's claim is barred by res judicata pursuant to the finding by the South Dakota Circuit Court that Onnen was fired solely because of his incompetence. *See* Doc. 89, p. 6-9. Judge Piersol ordered the ruling was without prejudice subject to the pending ruling by the South Dakota Supreme Court. The South Dakota Supreme Court subsequently affirmed the Circuit Court.

3

Amended Complaint. On April 27, 2011, the case was reassigned and on April 28, 2011, a Scheduling Order was filed which established September 26, 2011, as the date for the trial to begin. On August 15, 2011, the pending Motions for Judgment on the Pleadings and for Summary Judgment were filed. Onnen resists the motions. The matter has been fully briefed and oral argument was heard during the pre-trial conference on September 12, 2011.

## ANALYSIS

### 1. Summary Judgment Standard.

Under Rule 56(c)(2) of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if the movant can show that there is no genuine issue as to any material fact and that [the movant] is entitled to judgment as a matter of law. In determining whether summary judgment should be granted, the facts and the inferences from those facts are viewed in the light most favorable to the nonmoving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law.[16] "Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists."[17] In determining whether a genuine issue of material fact exists, the Court views the evidence presented based upon which party has the burden of proof under the underlying substantive law.[18] Summary judgment is appropriate in a False Claim Act case if "the plaintiff lacks sufficient evidence to show that any false or fraudulent claims have been made."[19] "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure

---

[16]*See* Fed.R.Civ.P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88, 106 S.Ct. 1348, 1356-57, 89 L.Ed.2d 538 (1986).

[17]*U.S. ex rel. Bryant v. Williams Building Corp.*, 158 F.Supp.2d 1001, 1005 (D.S.D. 2001).

[18]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

[19]*Rabushka ex. rel. U.S. v. Crane Co.*, 122 F.3d 559, 563 (8th Cir. 1997).

4

the just, speedy, and inexpensive determination of every action.'"[20] "The nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"[21]

### 2. The False Claims Act.

The False Claims Act (FCA) is found at 31 U.S.C. § 3729-33. It provides in part:

**§3729(a) Liability for certain acts.**
>**(1) In General.--** Subject to paragraph (2) any person who–
>>**(A)** knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>>**(B)** Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
>>**(C)** conspires to commit a violation of subparagraph (A), (B), (C), (D), (E,, (F) or (G);

*******

is liable to the United States Government for a civil penalty of not less than $ 5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 . . . . plus three times the amount of damages which the Government sustains because of the act of that person.

*****

>**(b)Definitions.**–For purposes of this section–
>>**(1)** the terms "knowing" and "knowingly"--
>>>**(A)** mean that a person, with respect to information–
>>>>(i) has actual knowledge of the information;
>>>>(ii) acts in deliberate ignorance of the truth or falsity of the information; or
>>>>(iii) acts in reckless disregard of the truth or falsity of the information; and
>>>**(B)** require no proof of specific intent to defraud;

---

[20]*Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

[21]*U.S. ex rel Bryant,* 158 F.Supp.2d at 1005 (citing *Matsushita,* 106 S.Ct. at 1356).

The False Claims Act was "originally passed during the Civil War in response to overcharges and other abuses by defense contractors..."[22] The False Claims Act and its *qui tam* component was intended to "help the government uncover fraud and abuse by unleashing a posse of *ad hoc* deputies to uncover and prosecute frauds against the government."[23] In 1958, the United States Supreme Court cautioned that the FCA was not designed to punish every type of fraud committed upon the government.[24]

In *Harrison*, however, the Court cited the legislative history to the 1986 amendments to the FCA and noted the FCA should be broadly construed.[25] "[E]ach and every claim submitted under a contract, loan guarantee, or other agreement *which was originally obtained* by means of false statements or other corrupt or fraudulent conduct, *or in violation of any statute or applicable regulation* constitutes a false claim."[26] The Court acknowledged that in cases where violation of a statute or regulation is the basis for the FCA claim "the courts in these cases will not find liability merely for non-compliance with a statute or regulation."[27] Instead liability for false certification is imposed if compliance with the statute or regulation was a prerequisite to gaining the benefit and the defendant affirmatively certified compliance.[28]

Onnen must establish several elements to recover under the FCA. Specifically, Onnen must show:
(1) the Defendants submitted a claim for payment to the federal government;
(2) the claim was false or fraudulent; and

---

[22]*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

[23]*Id.* (citation omitted, punctuation altered).

[24]*United States v. McNinch*, 356 U.S. 595, 599, 78 S.Ct. 950, 2 L.Ed.2d 1001 (1958).

[25]*Harrison, supra* at 786.

[26]*Id.* (emphasis in original).

[27]*Id.* at 787.

[28]*Id.*

6

(3) the Defendants submitted the claim "knowing" that it was false or fraudulent.[29]

To meet this required showing, Onnen must plead the alleged fraud with particularity.[30]

The Eighth Circuit also recently reiterated that "[t]he FCA is not concerned with regulatory noncompliance. Rather it serves a more specific function, protecting the federal fisc by imposing severe penalties on those whose false or fraudulent claims cause the government to pay money."[31]

### 3. The Parties.

Onnen was employed by Southeast Technical Institute (STI). He asserts the false claims were made by persons also employed by STI. STI is governed by the Sioux Falls School District (SFSD), but STI is a post-secondary technical school for which the SFSD does not contribute any of its own money. Pursuant to state statute (SDCL § 13-39-39.1) all funding for STI is kept in an account (Fund 23) separate from other SFSD funds. Fund 23 is limited to state funds apportioned and approved each year by the legislature, federal grants, student tuition, and payments for sales or services to the public and students, and fees. STI receives no funding from local tax revenue, i.e. revenue from taxes levied and paid to support the budget adopted by the SFSD to operate its K-12 educational programs. All costs and expenses relating to STI are charged to and paid from Fund 23. Onnen has not named STI or any of STI's employees as Defendants in this lawsuit.[32] He

---

[29] *U.S. ex. rel. Schuhardt v. Washington University*, 228 F.Supp.2d 1018, 1023 (E.D. Mo. 2002) (citing *Rabushka v. Crane Co.*, 122 F.3d 559, 563 (8th Cir. 1997)). *See also* 31 U.S.C. § 3729.

[30] *U.S. ex. rel. Vigil v. Nelnet, Inc.*, 639 F.3d 791, 796 (8th Cir. 2011).

[31] *Id.* at 795-96.

[32] The Defendants spent considerable effort to persuade both Judge Piersol and the undersigned that STI is an arm of the State and therefore not a "person" who may be sued under the FCA. *Vermont Agency of Natural Resources v. U.S. ex. rel. Stevens*, 529 U.S. 765, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000). While not agreeing with Defendants' proposition, Onnen asserts that STI is not an entity which can sue or be sued. It is not helpful to decide these issues because STI is not a party. Likewise, the Defendants' assertion that any FCA judgment against the SFSD would be paid out of Fund 23 is not an issue on which this decision turns. Whether STI, as a non-party, could or would voluntarily pay out of its separate funds a judgment which might hypothetically be entered against the SFSD has no bearing on whether the SFSD could be legally liable for this FCA claim in the first instance. Also, there is nothing in the record to suggest that the SFSD has the power to lawfully satisfy a judgment against the SFSD from STI's Fund 23.

admits he has no information suggesting the persons he did name individually (the SFSD school board members or Superintendent Homan) knowingly submitted any false claim to the United States Government, or were aware of the alleged activities at STI that form the basis of his Complaint.

### 4.  Onnen's Allegations.

Onnen asserts the Defendants violated the FCA by falsely certifying they were in compliance with certain federal regulations and statutes. Onnen asserts that in order to become eligible for federal funds through several student loan programs, STI signed a Program Participation Agreement (PPA) in 2000 and then again in 2006. The PPA certified STI was in compliance with specified federal statutes and regulations. Onnen alleges that because STI was not in compliance with those statutes and regulations, STI violated the FCA.[33]

In his Complaint, Onnen specifically claims STI was not in compliance with various federal statutes and regulations because it: falsified graduation surveys,[34] falsely claimed its diesel technology program was certified by the National Automotive Technicians Education Foundation,[35] violated the Family Educational Rights and Privacy Act (FERPA),[36] made false claims about the

---

The U.S. Supreme Court has ruled that a state is not a person under the False Clams Act who can be sued. *Id.* The U.S. Supreme Court has also ruled that a local governmental unit can be sued under False Claims Act. *Cook County, Illinois v. Chandler*, 538 U.S. 119, 123 S.Ct. 1239, 155 L.Ed.2d 247 (2003). It is not decided here whether the SFSD is either a state agency which cannot be sued under the FCA or whether the SFSD is a local governmental unit which can be sued under the FCA. Likewise, this decision does not turn on Eleventh Amendment immunity of the state. Rather, this decision turns on traditional summary judgment standards and on an application of the fundamental elements which a plaintiff must prove in order to recover under the FCA.

[33] The PPA was signed by Terrance Sullivan in 2000 and Jeff Holcomb in 2006. Both are designated as "Director" of STI. Copies of the PPA are found at Doc. 107.

[34] Onnen asserts a STI employee falsified the surveys. Doc. 66, ¶ 20.

[35] Onnen asserts erroneous information was included in the STI catalogue. *Id.*, ¶ 21.

[36] In the Complaint, Onnen asserts STI sent information to the National Student Loan Clearing House in violation of FERPA. *Id.* at ¶ 23. In his deposition, however, he did not mention the National Student Loan Clearing House regarding his FERPA violation claim. Instead the incident involved a student who was upset that her parent had been given information

8

qualifications of its faculty,[37] and awarded degrees to students who had not earned them.[38]

### 5. The Sufficiency of Onnen's Allegations.

To prove a claim under the FCA, Onnen must come forward at the summary judgment stage with something more than his own speculation that Defendants made a claim for payment from the government and that the claim was "false or fraudulent." Summary judgment is appropriate if Onnen lacks sufficient evidence to show that any false or fraudulent claims have been made.[39] Under the False Claims Act's scienter requirement, "innocent mistakes, mere negligent representations and differences in interpretations" will not suffice to create liability.[40] "[T]he promise must be false when made. . . . For a certified statement to be 'false' under the Act, it must be an intentional, palpable lie."[41] Evidence of past regulatory non-compliance is insufficient to create an inference that the Defendant lied when it certified future compliance, or to create sufficient evidence of intent or knowing fraud under the Act.[42]

Onnen submitted his Response to Defendants' Statement of Undisputed Material Facts and Statement of Undisputed Material Facts in resistance to the Defendants Motion for Summary Judgment.[43] In support of his own Undisputed Material Facts, and to dispute Defendants'

---

about her student loans. Doc. 109-2, p. 3. Another perceived FERPA issue involved a secretary who gave students their grades over the phone. *Id.* at p.5. The final example is a teacher who posted grades on a bulletin board outside his classroom. *Id.* at p.10.

[37] See Complaint ¶ 28.

[38] *Id.* ¶ 33.

[39] *Rabushka ex. rel. U.S. v. Crane Co.*, 122 F.3d 559, 563-64 (8th Cir. 1997).

[40] *U.S. ex. rel. Hendow v. Univ. of Phoenix*, 461 F.3d. 1166, 1176 (9th Cir. 2006).

[41] *U.S. ex. rel. Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996).

[42] *Id.* at 1268.

[43] Doc. 113.

Undisputed Material Facts, Onnen cites only his own Affidavit.[44]  Onnen's conclusory Affidavit, however, is not sufficient to preclude summary judgment.

    For example:

In ¶ 14 of his Affidavit, Onnen states "STI falsified job placement rates in publications and recruiting materials."

In ¶ 16 of his Affidavit, Onnen states "STI's false misrepresentations on its placement reports were intentional misrepresentation designed to mislead the South Dakota State Board of Education as well as the prospective students and their parents, about the school's actual placement rate. For a number of the students on which STI was reporting data, STI has no documentation to support what it reported."

In ¶ 17 of his Affidavit, Onnen states "(a) Southeast Technical Institute, in requesting Title IV funds, falsely certified educational programs (instructors and accreditations) and employability of its graduates to the DOE in compliance with the HEA Subpart F–Misrepresentations, in the Program Participation Agreement it submitted in 2000 and 2006 to the DOE. (b) STI falsely induces the Government to approve and/or pay out the Title IV funds, based on its false promises to comply with 34 CFR 668 of the HEA program.(c) The promises when made are false. (d) Upon making its promises and certifications, STI engages in misrepresentations.

    These are only a few examples offered by Onnen as support for his Undisputed Material Facts.[45] Onnen cites no other record evidence in support of his sweeping allegations. The excerpts of Onnen's deposition which were provided by Defendants have also been reviewed.[46]  Contrary to the speculative statements contained in his Affidavit, Onnen admitted in his deposition he does not know whether the placement information contained in STI's catalogue is truly inaccurate.[47] Likewise, Onnen conceded he does not know who compiled the STI catalogue nor does he have

---

[44]Onnen's Response to Defendants' Statement of Undisputed Material Facts and Statement of Undisputed Material Facts is Doc. 113. Onnen's Affidavit is Doc. 111. Onnen cites other sources for ¶¶ 91-111 of his own Undisputed Material Facts. Those Undisputed Material Facts pertain strictly to the nature of the relationship between the SFSD and STI.

[45]Paragraphs 14, 16 and 17 of Onnen's Affidavit are identical to Onnen's Undisputed Material Fact Nos. 11, 13 and 14.

[46]Doc. 109, EX F.

[47]*Id.* at pp. 66-72.

10

any evidence to support his claim that the qualifications of instructors were intentionally misrepresented in the catalogue.[48]

Onnen's speculation and lack of evidence here is in stark contrast to the evidence in *Hendow* which was sufficient to survive a motion to dismiss. In *Hendow* the relator alleged that University staff created and constantly changed policies with the specific intent to deceive the government and hide their fraud and that they "openly bragged about perpetrating a fraud . . ."[49] Even assuming that STI's signature on a PPA in order to qualify for federal funds constitutes the potential for a FCA violation, Onnen has offered no evidence here which is similar to the damning evidence in *Hendow*. The burden is upon Onnen to provide factual support for the who, what, where, when, and how of the fraudulent conduct he alleges.[50]

Onnen's assertion that STI signed the PPA in 2000 and then again in 2006 either knowing STI was not in compliance with the various federal regulations and statutes with which it agreed to comply, or intending not to comply, is not supported by anything other than his own speculation in the form of an affidavit. At the summary judgment stage Onnen must produce something more than speculation.[51] He must also produce something more than a promise made but not performed.[52] And he must produce something more than merely showing that mistakes have been made.[53] The

---

[48]*Id.* at p. 96.

[49]*U.S. ex. rel. Hendow v. University of Phoenix*, 461 F.3d 1166, 1175 (9th Cir. 2006).

[50]*U.S. ex. rel. Costner et. al. v. U.S.* 317 F.3d 883, 888-889 (8th Cir. 2003)(considering Rule 9(b) pleading requirements and affirming dismissal of a claim when plaintiff did not provide information about who, when and how).

[51]*Rabushka ex. rel. U.S. v. Crane Co.*, 122 F.3d 559, 563-64 (8th Cir. 1997).

[52]*United States v. Shah*, 44 F.3d 285, 293, fn.14 (5th Cir. 1995).

[53]*U.S. ex. rel. Hopper v. Anton*, 91 F.3d 1261, 1267-68 (9th Cir. 1996). Onnen's expert disclosure (Doc. 116) indicates that the "potential violation of STI's PPA . . . and potential violation of their own policies . . . could potentially put the institution at risk of liability regarding their past, current and future eligibility for Title IV funds." Doc. 116 at p. 3. The

United States Supreme Court indicated summary judgment should be granted against the non-moving party "unless affidavits or other evidence set forth specific facts showing that there is a genuine issue for trial. **The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.**"[54] Because Onnen has not provided facts, but has provided only conclusory allegations in his affidavit summary judgment is appropriate.

Onnen argues the SFSD is the governing body of STI and is therefore liable for STI's acts under the FCA. But even assuming that relationship alone could subject the SFSD to FCA liability for the acts of STI employees, Onnen has produced no facts to support the conclusion that STI violated the FCA.

### 6. The Eighth Circuit's Holding in *Vigil* Precludes Onnen's Claim.

Summary judgment will be granted for another reason. The Eighth Circuit has spoken very recently about the FCA. In *U.S. ex. rel. Vigil v. Nelnet*, the Eighth Circuit cautioned that the FCA is not concerned with regulatory non-compliance. In *Vigil*, much like Onnen's allegations in this case, the relator asserted the defendant "falsely represented or certified that Nelnet was an eligible lender or servicer, when in fact its [alleged violations] made it ineligible for FFELP[55] payments."[56] The Eighth Circuit noted:

> We consider it significant that the FFELP statutes and regulations provide detailed remedies for noncompliant Lenders and Servicers. *See* 20 U.S.C. § §1082(g) (civil fines), 1085(d)(5) (revocation of "eligibility" status); 34 C.F.R. § 682.702, .705, .706 (suspending, limiting, or terminating continued participation), .709 (recovery of

---

observation of Onnen's expert that there have been "potential" violations is not sufficient to show the Defendants knowingly presented a false or fraudulent claim.

[54]*Lujan v. National Wildlife Federation, et. al.*, 497 U.S. 871, 888-89, 110 S.Ct. 3177, 3188-89, 111 L.Ed.2d 695 (1990) (emphasis added, punctuation altered, citation omitted).

[55]Federal Family Education Loan Program.

[56]*U.S. ex. rel. Vigil v. Nelnet, Inc.* 639 F.3d 791, 796 (8th Cir. 2011).

insurance benefits). Nowhere do the extensive regulations require that a Lender certify its compliance with FFELP's anti-inducement and false advertising provisions, nor do they suggest that non-compliance with these regulatory requirements may result in the wholesale recovery of claims previously paid to the offending Lender on eligible student loans. **When the statute creates 'a complex monitoring and remedial scheme that end FFELP payments only as a last resort, it would be curious to read the FCA, a statute intended to protect the government's fiscal interests, to undermine the government's own regulatory procedures.**[57]

Here Onnen claims STI falsely asserted in the PPAs that it was eligible to participate in programs which provide federal funds through student loans. As Defendants have demonstrated, however, there is a vast regulatory scheme which regulates both the accreditation required for schools like STI in order to participate in such programs, and which regulates participation in the programs themselves.[58] The documentation provided by Defendants shows that the Department of Education has its own scheme of sanctions for violations of regulations and statutory requirements by participating institutions with respect to federal student loan programs.[59]

Sanctions may include emergency actions, fines, limitations, suspensions and terminations.

---

[57] *Id.* at 798-99 (emphasis added).

[58] Doc. 109, EX G (Higher Learning Commission considerations regarding accreditation status); Doc. 119, EX H. (CRS Report for Congress: Institutional Eligibility for Participation in Title IV Student Aid Programs). The detailed regulations which correspond to the sanctions referred to in EX H are found at: 34 C.F.R. §§ 668.11 (Standards for participation in Title IV, HEA programs; Scope) Subpart G: § 668.81 (Definitions applicable to emergency actions, imposition of fines, limitation suspension or termination of eligibility); 668.83 (Emergency actions); 668.84 (Fine proceedings); 668.85 (Suspension proceedings); 668.86 (Limitation or termination proceedings); 668.88 & 89 (Hearing procedures); 668.90 (Initial and final decision and appeal procedures).

[59] The authorizing statute for the regulations found at 34 C.F.R. § 668 and its subparts is 20 U.S.C. § 1094 which is that portion of the Higher Education Act specific to program participation agreements. The terms of the STI's PPA include excerpts from 34 C.F.R. § 668 and provide that except for two limited circumstances not applicable here, "the Secretary terminates a program participation agreement through the proceedings in subpart G of [34 C.F.R. § 668]." *See* Doc. 107-1 EX A p. 6.

The termination of the institution's participation in the federal student aid program is characterized as "the last type of action" available under the Department's scheme.[60] According to *Vigil*, when the statute creates "a complex monitoring and remedial scheme that end[s] . . . payments only as a last resort, it would be curious to read the FCA, a statute intended to protect the government's fiscal interests, to undermine the government's own regulatory procedures."[61] For this reason as well, Defendants' Motion for Summary Judgment is GRANTED.

## CONCLUSION AND ORDER

For the reasons more fully explained above, IT IS ORDERED:

(1) Defendants' Motion for Judgment on the Pleadings (Doc. 105) is DENIED; Defendants' Alternative motion for Summary Judgment (Doc. 105) is GRANTED;

(2) Plaintiff's Supplemented Amended Complaint (Doc. 66) is DISMISSED, with prejudice and on the merits with Plaintiff taking nothing thereunder.

Dated this **21** day of September, 2011.

BY THE COURT:

JOHN E. SIMKO

_____
United States Magistrate Judge

---

[60] Doc. 119, EX H at p. CRS-21.

[61] *U.S. ex rel. Vigil v. Nelnet, Inc.* 639 F.3d 791, 798-99 (8th Cir. 2011).